## Maddin v. Safety Motor Coach Co. et al.

May 16, 1941.

Vest & Vest, Ward Yager and R. T. Carroll for appellant.

R. W. Keenon for appellee Central Greyhound Lines.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

Since most of the facts out of which this litigation arose are set forth in our opinions disposing of numerous former related appeals, we deem it preferable to refer the interested reader to those opinions rather than to attempt a chronological recitation of details which would entail an unwarranted lengthening of this opinion. See Safety Motor Coach Co. v. Maddin's Adm'x et al. (Swope v. Yelton, Court Clerk, et al.), reported in 266 Ky. 459, 99 S. W. (2d) 183. See also Swope et al. v. Central Greyhound Lines, 278 Ky. 104, 128 S. W. (2d) 171.

Following the reversal of the Chancellor's decree adjudging that the administratrix's attachment lien was superior to the mortgages mentioned in the answer of the Safety Motor Coach Company and subjecting to the satisfaction of her claim the unpaid balance of the purchase price which the Central Greyhound Lines had contracted to pay the mortgage creditors of the Safety Motor Coach Company, the administratrix was permitted by the Circuit Court to file two amended petitions to which the appellee, Ohio Valley Coach Corporation, was made a party defendant. She also tendered, but was not permitted to file, a reply to the original answer of the Safety Motor Coach Company in which she attacked the validity of the above mentioned mortgages. The purpose of the latter pleading was to enable the administratrix to re-litigate the validity of the mortgages referred to and the question of whether the Central Greyhound Lines was liable to the administratrix by reason of its acquisition of the assets of the Safety Motor Coach Company. Since we have concluded that the issues attempted to be raised by the tendered reply have been disposed of on the former appeals, and hence cannot be re-litigated, we shall briefly set forth our reasons for this conclusion, and thereafter set forth and dispose of the questions raised by the amended petitions, the object of which, in effect, was to impress liability for the payment of the judgment of the administratrix upon the individual stockholders of the Safety Motor Coach Company and the Ohio Valley Coach Company. In doing so, we shall refer to the administratrix as the "appellant," to the two coach companies as the "Safety Company" and the "Ohio Company," and to the Central Greyhound Lines as the "Greyhound."

I. It is strenuously argued by counsel for appel-

lant that this Court in its former opinion sustained the validity and priority of the mortgages held by the creditors of the Safety Company because their validity had not been attacked; and that since the Chancellor had sustained the appellant's demurrer to the answer of that Company setting forth the mortgages, appellant had no occasion or opportunity to attack them, and hence should be permitted to do so by reply. But the fatal defect in this argument is that the demurrer to the answer was an attack on the validity of the mortgages based upon the same grounds of alleged invalidity as those urged by appellant in the tendered reply, namely, that a certificate of convenience and necessity cannot legally be mortgaged, and that the consent of the Commissioner of Motor Transportation had not been obtained. Obviously, the Court in its former opinion adjudged that the mortgages were valid in the absence of an attack based upon fraud in their execution or lack of consideration, and the tendered reply failed to attack them on either of these grounds. On the contrary, it admitted their execution and recording long prior to the origin of the appellant's claim, and, as before stated, attacked them solely on the ground that a certificate of convenience and necessity could not be mortgaged, and that the approval of the Commissioner of Motor Transportation had not been obtained. Moreover, an examination of the records of the former appeals discloses that the validity of the mortgages referred to was vigorously attacked in the briefs of counsel for the administratrix on the very grounds on which their validity is now assailed and the additional ground that the mortgages were not recorded in Boone County. Apparently, it was these objections which caused the Chancellor to hold the mortgages invalid, as no other reasons for his action were suggested.

It is true that we said in our former opinion [266 Ky. 459, 99 S. W. (2d) 186]:

"Admitting this contention [that the Central Greyhound Lines' purchase was in violation of Section 201 of the Constitution] without deciding it, the mortgages set up in the answer as amended not being assailed, they are still valid and enforceable liens."

But we also said with reference to the mortgagees:

"Without filing an answer and cross-petition and a

604

summons thereon, they were not entitled to a personal judgment, or 'to withdraw or receive any of the $9,600.00 until they filed an answer showing their right thereto,' but their mortgages were valid and they were entitled to assert, so long as the action was pending, their liens under Section 692."

And again:

"The administratrix' garnishment served only to subrogate her right to that of the Safety Motor Coach Company in the $9,600 unpaid under the Central Greyhound Lines' contract and no more, in the absence of a charge of fraud sustained by substantial evidence, and it had no right to the $9,600 as against the mortgagees."

And again:

"It is equally as well settled that the Central Greyhound Lines' contract being bona fide, the creditors of the Safety Motor Coach Company whose debts were secured by the mortgages on the property sold under it were entitled to receive the money on their respective debts which was secured by a lien on the identical property."

With reference to the claim that the Greyhound is liable to the appellant in any event because of its purchase of the certificates of convenience and necessity, we said:

"In the absence of a contractual obligation or actual fraud of some substantial character, the Central Greyhound Lines was not responsible for the debts of the Safety Motor Coach Company, including Maddin's judgment, beyond the stipulated contract price of the property conveyed to it. American Railway Express Co. v. Commonwealth, 190 Ky. 636, 228 S. W. 433, 30 A. L. R. 543; Martin v. Sulfrage, 159 Ky. 363, 167 S. W. 399; Justice's Adm'r v. Catlettsburg Timber Co., 168 Ky. 665, 666, 182 S. W. 831."

The appellant has not attempted to show that any fraud was practiced by the Greyhound, or that the mortgages executed by the Safety Company were fraudulent, or that the indebtedness which they were given to secure was not valid. Even if the mortgages had been technically invalid because of the intangible nature of the

property or right covered thereby, nevertheless, their inclusion in the contract of sale to the Greyhound as obligations to be paid by that Company direct to the mortgagees would have operated to assign to such mortgagees' rights to receive such payments superior to any right which thereafter could have been acquired by an attaching creditor of the mortgagor or assignor. 7 C. J. S., Attachment, Section 273, page 455.

But it is not necessary to further discuss the validity of the mortgages executed by the Safety Company and enumerated in the contract of sale to the Greyhound, or the non-liability of that Company to the appellant, since all questions with respect thereto have been determined adversely to appellant's contentions by our former opinions, which, right or wrong, are the law of the case. Lexington & E. Railway Co. v. Sexton, 193 Ky. 201, 235 S. W. 773; Cincinnati, N. O. & P. T. Railway Co. v. Perkins' Adm'r, 193 Ky. 207, 235 S. W. 776, 24 A. L. R. 599.

The second amended petition which purported to be a more accurate statement of the matters attempted to be alleged in the first amended petition filed after a return of the case to the Circuit Court following the delivery of our opinion reported in 266 Ky. 459, 99 S. W. (2d) 183, charged in substance that on June 28, 1933, the Safety Company sold its busses and one of its schedules, and leased its remaining schedules to the Ohio Company; that there was no cash consideration for the transfer; that the Ohio Company assumed the debts of the Safety Company, including its indebtedness to J. M. Robsion and John C. Swope, and that the transfer was fraudulent; that by reason of the assumption of the obligations of the Safety Company by the Ohio Company, the unpaid portion of the $20,000 which the Greyhound had contracted to pay the creditors of the Safety Company for the latter's certificate of convenience and necessity was in fact the latter's property subject to appellant's attachment lien, and that the $30,000 contracted to be paid by the Greyhound to the Ohio Company for its certificate of convenience and necessity was more than sufficient to pay all the claims due and owing by both coach companies; that John C. Swope had theretofore received payments as a stockholder from both the Safety Coampany and the Ohio Company; and that the payments to John C. Swope should be applied on any

balance which might exist in his favor as a lien claimant.

Without further reciting the details of the supplemental pleadings, it is sufficient to say that issue was joined and proof taken which failed to show either a lack of consideration for the transfer, or that the transfer was fraudulent, or that the Ohio Company had agreed to pay the obligations of the Safety Company to its stockholder mortgage creditors. In short, we find nothing in the proof which established that any part of the $20,000 contracted to be paid by the Greyhound for the Safety Company's certificate of convenience and necessity belonged to the latter Company instead of to its mortgage creditors named in the contract of sale. It is true that the contract between the Safety Company and the Ohio Company provided that the latter should assume and pay the balance of the purchase price on the busses transferred, and that all the property and rights acquired by the Ohio Company remained subject to the four mortgages executed by the Safety Company to J. M. Robsion and John C. Swope. But a close scrutiny of the contract, of the minutes authorizing its execution, and of the terms of the mortgage executed by the Ohio Company on its own certificate of convenience and necessity as additional security to Swope and Robsion, convinces us that no actual assumption by the Ohio Company of the mortgage indebtedness of the Safety Company to its stockholders was ever intended. The Safety Company's certificate of convenience and necessity was not sold to the Ohio Company, but merely leased, and there is nothing to indicate a novation, or that the mortgagees released or ever intended to release their mortgages thereon. When it was sold to the Greyhound under the contract described in our former opinions, they had the right to insist that the purchase price be paid direct to them. It is further true that of the $30,000 which the Greyhound contracted to pay for the certificate of convenience and necessity owned by the Ohio Company, a surplus of $11,744.33 remained after the lien debts of that corporation had been paid. But this contract and the original answer of the Safety Company filed prior to the former appeals show that this surplus was the property of the Ohio Company or its stockholders and there is nothing to show that it was in fact subject to the claims of the appellant.

We are of the opinion that our former decision holding that the mortgages referred to in the contract with the Greyhound were valid also disposes of the appellant's present contention. The contract filed as an exhibit with the answer of the Safety Company in the original proceedings shows on its face the overplus and its contemplated distribution, and in the administratrix' brief on the former appeals we find the statement:

> "The presumption again being against the pleader, it shows that there was a sum for distribution, not in favor of claimants but for the benefit of officers or stockholders of this Company in the sum of approximately $11,744 without regard to its creditors under Section 203 of the Constitution."

The officers and stockholders referred to were parties to the litigation over the attached fund, and the contract between the Greyhound and the two motor coach companies was attacked. If it is objected that the present issue was not directly raised by the pleadings filed prior to the former appeals, we point to the fact that it is doubtful whether it is now more fully raised, since the prayer of the first amended petition filed by appellant subsequent to the reversal is merely that the Ohio Company be made a defendant, that she be given an opportunity to take depositions and file a further amendment, and that she recover her costs and be awarded "all proper and equitable relief." None of the individual stockholders referred to responded to this or the second amended petition, the prayer of which was: "Wherefore, she prays as in her petition."

It is contended by counsel for appellant that the Ohio Company assumed the payment of the mortgage debts of Robsion and Swope, and, "if so, then the stockholders of the Ohio Valley, who ultimately received the overplus of more than $11,000.00, are liable to the extent of money received by them. This also would have the effect to release the $20,000.00 claimed to have been paid for the Safety's franchise so as to leave it free to pay appellant's debt, that is, if the franchise has in fact been sold, which we doubt." How the $20,000 could be freed is not apparent, since the entire purchase price has long since been paid by the Greyhound directly to the individual recipients mentioned in the contract of sale. It is questionable whether the pleadings are suffi-

608

cient to justify a judgment against the individual stockholders, and if they were, the proof is not. Viewed in the light most favorable to the deductions which appellant's counsel requests us to draw, it creates no more than a doubt as to the correctness of the findings of the special chancellor who presided after the case had been returned to the Circuit Court, and who rendered the judgment dismissing the amended petitions.

Judgment affirmed.